1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF ARIZONA
2

3    UNITED STATES OF AMERICA,          )
                                        )
4                        Plaintiff,     )
                                        )
5         vs.                           )    No. CR 07-1178-PHX-SRB
                                        )
6    JAVIER MENDOZA CUEVAS,             )    Phoenix, Arizona
                                        )    December 15, 2008
7                        Defendant.     )    3:34 p.m.
     ─────────────────────────────────  )
8

9

10                    TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE SUSAN R. BOLTON
11                UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:         By: Glenn B. McCormick
                                U.S. ATTORNEY'S OFFICE
14                              Two Renaissance Square
                                40 North Central, Suite 1200
15                              Phoenix, AZ  85004-4408

     For the Defendant:         By: Gabriel Valdez, Jr.
16                              LAW OFFICE OF GABRIEL VALDEZ, JR.
                                337 N. 4th Avenue
17                              Phoenix, AZ 85003

18   Court Reporter             Vicki Reger

19   Transcription Service:     A/V Tronics, Inc.
                                365 E. Coronado Rd., Ste. #100
20                              Phoenix, AZ 85004-1525

21

22

23

24

25   Proceedings recorded by electronic sound recording, transcript
     produced by transcription services.

1                          December 15, 2008

2          THE CLERK:  All rise.  Court is now in session.

3          THE COURT:  Good afternoon.  Please sit down.

4          Criminal Case 07-1178, United States of America

5   versus Javier Mendoza Cuevas, time set for sentencing.

6          MR. MCCORMICK:  Good afternoon, Your Honor, Glenn

7   McCormick appearing for the United States.

8          MR. VALDEZ:  Good afternoon, Your Honor.  Gabriel

9   Valdez on behalf of my client Mr. Cuevas Mendoza who's present

10  in custody and is being assisted by a Court Interpreter.

11         THE COURT:  Good afternoon.

12         Mr. Valdez, I wanted to talk to you first about your

13  two objections.

14         MR. VALDEZ:  Yes, Judge.

15         THE COURT:  One of the objections had to do with the

16  two-level adjustment for the possession of weapons.

17         MR. VALDEZ:  Correct.

18         THE COURT:  And the Government responded there's an

19  addendum that discusses two different reasons why the two-level

20  adjustment is justified; one, it is undisputed that the

21  individuals who were tending these marijuana plants had guns?

22         MR. VALDEZ:  Correct.

23         THE COURT:  Secondly, it is undisputed that at the

24  time that your client's residence was searched there were some

25  large number of guns, more than three.  Some of which were

1    specifically located in the bedroom that's been identified as

2    the one he occupied.

3           And even though the Defendant may have denied

4    supplying the guns to the individuals who were tending the

5    marijuana plants, or even if he didn't have actual knowledge

6    that they had the guns, that isn't the standard that is

7    required for the conspiracy.  It's attributable to him as

8    relevant conduct whether he knew about it or not.

9           And in addition with respect to the guns that he

10   actually possessed the burden is on your client to show that

11   it's clearly improbable that the weapons that he actually

12   possessed were possessed in connection with the criminal

13   activity that he was involved in; namely this conspiracy.

14          MR. VALDEZ:  I understand, Judge.

15          THE COURT:  So having reviewed those two separate

16   rationales for the two-level adjustment do you still maintain

17   that objection, or are you convinced that it's properly

18   applied?

19          MR. VALDEZ:  Judge, I think my client wanted you to

20   make your decision on that level of adjustment based upon

21   what's in the report and our position.

22          THE COURT:  All right.  The objection is overruled.

23   The Court finds two-level adjustment for the possession of a

24   weapon was properly applied both under the standard of relevant

25   conduct and upon the Defendant's failure to demonstrate that it

1    was clearly improbable that the weapons were connected with the

2    offense.

3           The second objection has to do with the two-level

4    adjustment for the Defendant's role in the offense.  And in

5    this regard I guess I need more information from the Defendant,

6    than just him saying, I didn't, you know, "I was just supplying

7    things."  Because there's no explanation as to how he knew what

8    to take, how he knew when to take it.

9           If he didn't know anything about cultivating

10   marijuana how did he know what to take to the people that were

11   cultivating?

12          In addition there's this marijuana -- the marijuana

13   seeds and loose marijuana that was discovered in his home that

14   would be also consistent with him having some greater role than

15   that of driving a truck with supplies in it.

16          And yet he has not provided any explanation that

17   would explain how it is that he knew -- that he did what he

18   did.  All he has provided both in what you have supplied in the

19   letter he wrote, is that he says, "Well, I was on hard

20   financial times and somebody loaned me some money that I was

21   going to pay back, so I agreed to do this but I never got paid

22   for it."

23          Well that still doesn't explain -- oh, and I forgot

24   there's one other thing.

25          MR. VALDEZ:  Oh, okay.

1          THE JUDGE:  It doesn't explain how, you know, where

2  the stuff in the truck came from.

3          MR. VALDEZ:  Right.

4          THE COURT:  It doesn't explain why he had marijuana

5  seeds that would be consistent with him being able to direct

6  people to plant.  And the third thing that I had forgotten

7  about, it also doesn't explain how it is that two of the

8  individuals who fled from law enforcement ended up at his

9  house, if all he had to do with this conspiracy was somebody

10  asked him to drive a truck occasionally; and he only did it

11  three times.

12          MR. VALDEZ:  Judge, I believe our position is that my

13  client was being directed by another individual.  That

14  individual had advised him of the situation and he was being

15  directed when to take the material there and what was needed.

16          With regards to the individuals that were seen at one

17  of the -- one of the gardens and they ended up back at his

18  house, without having an opportunity to speak to my client and

19  invest --

20          THE COURT:  Was it two?

21          MR. VALDEZ:  Two, yeah.  At the end of it, yeah,

22  there was two.

23          THE COURT:  Yeah.  And how could they have found him,

24  if all he was --

25          MR. VALDEZ:  Judge, I --

1           THE COURT:  -- somebody driving a truck that somebody

2     else filled with the supplies?

3           MR. VALDEZ:  If I may have a moment, Judge?

4           THE COURT:  Yes.

5     (Pause)

6           MR. VALDEZ:  Judge, as far as the information as it

7     pertains to that specific issue, there's really no additional

8     information, but for the fact that it's our position that my

9     client was receiving directions from another individual and

10    that's how they received the information from where he was at

11    his house and how he --

12          THE COURT:  Who?

13          MR. VALDEZ:  The other -- the other two individuals

14    my client has indicated to me that they were dropped there at

15    his home and he was given instructions to take the individuals

16    over to one of the gardens, and that's how they ultimately

17    ended up back at his house.

18          THE COURT:  Oh, you're saying that he, in addition to

19    transporting supplies at one time had transported two of the

20    workers, and when they fled law enforcement they eventually

21    made their way back to the house they had started from; namely

22    the Defendant's house?

23          MR. VALDEZ:  Yes, Judge.  And that's an issue that

24    you asked me to address, and that's --

25          THE COURT:  Okay.

1      MR. VALDEZ:  Yes.

2      THE COURT:  Mr. McCormick, you know, you don't need

3  to address the issue related to the guns, I have already

4  overruled that objection.  But the issue as to whether it's

5  appropriate for there to be a role adjustment in this case.

6      MR. MCCORMICK:  Your Honor, there may in fact be

7  somebody who's directing this Defendant.  And --

8      THE COURT:  I have little doubt that there's higher

9  ups than this Defendant.

10     MR. MCCORMICK:  And there may be multiple levels of

11 that going into Mexico as well, which we cannot prove.  We have

12 a good idea of somebody, though, who's related to the Defendant

13 who may have been directing him, however we did not have

14 adequate information to indict.

15     However this Defendant, nonetheless, had intimate

16 knowledge of the conspiracy.  He was responsible for delivering

17 food and supplies for conducting the activities; assets, the

18 irrigation pipe, the fertilizer.  And he didn't just --

19 somebody just didn't give it to him and have him deliver it, he

20 maintained a supply at his home --

21     THE COURT:  Okay.  That's the part that I wanted to

22 get into.  Because if somebody said, "Here's a bunch of stuff

23 put it in the back of your truck and drive it up there,"

24 there'd be some question as to his role in the offense.  But

25 you're that there was -- he maintained inventory at his home?

1          MR. MCCORMICK:  Correct.  Of the -- the fertilizer as

2    well as the irrigation tubing, there's surveillance of him at a

3    home improvement store actually purchasing supplies with other

4    individuals to take up to these locations.  There's been

5    multiple gardens.  There's a relationship between him and

6    individuals who have been involved with gardens for multiple

7    years who have been indicted and prosecuted in this district.

8          His phone number appears in multiple other phones

9    that were associated with the people involved in these gardens.

10   There appears to be a level of knowledge.  And I recognize that

11   knowledge alone doesn't make him a leader, but that knowledge,

12   along with the assets that you see present with him, the seeds,

13   the irrigation tubing and the fertilizer as well as his

14   multiple trips up there and him being responsible to keep these

15   guys alive, they're in very remote areas, it's highly unlikely

16   that the two that escaped hiked all the way back to Phoenix.

17         They probably had phones and they probably had his

18   number and/or somebody closely related to him, and they called

19   and got a ride.  But then again we find them at his house.  He

20   seems to be managing also the human resources.

21         It's highly likely that these individuals were going

22   to be taken back up to the gardens to complete the job.  If not

23   in this garden, knowing that it was discovered, in other

24   gardens that were up in the forest that were being monitored

25   and were later taken down.

1          THE COURT:  And when you say his phone number was

2    found in the possession of various individuals they were not

3    limited to this one garden, but some of the other gardens that

4    were part of this overall investigation?

5          MR. MCCORMICK:  Correct.

6          THE COURT:  Okay.  Anything else, Mr. Valdez?

7          MR. VALDEZ:  No, Judge.

8          THE COURT:  The objection is overruled.  The Court

9    finds that a role adjustment is appropriate in this case.  The

10   Defendant was at least, based on the preponderance of the

11   evidence standard, and based on the evidence that the

12   Government has pointed to, at least a manager of this garden

13   and the individuals who were working in it.

14          Such things as being in possession of the seeds,

15   actually shopping for the supplies and maintaining an inventory

16   are incompatible with the suggestion that all he did was drive

17   a truck as directed by others.  But apparently he had

18   sufficient knowledge about how to cultivate marijuana to know

19   what was needed and to know when to bring it and how much to

20   bring, and had a ready inventory on hand for that.

21          Also, this presence of the individuals at his home,

22   that they would return to his house would also indicate that

23   they look to him as an organizer or management at least of

24   their activities as it related to their responsibilities to

25   cultivate the marijuana at these particular locations.

1          Are you ready to proceed with sentencing?

2          MR. VALDEZ:  Yes, Your Honor, we are.

3          THE COURT:  Mr. Cuevas, please tell me your full

4    name.

5          THE DEFENDANT:  Javier Cuevas Mendoza.

6          THE COURT:  What is your date of birth?

7          THE DEFENDANT:  12/13/73.

8          THE COURT:  The plea agreement previously entered is

9    accepted and entered of record.  There has been a determination

10   of guilt by a plea of guilty previously entered.  It is now the

11   judgment of the Court that the Defendant is guilty of

12   conspiracy to cultivate marijuana, a Class A felony in

13   violation of Title 21, USC § 841 and 18 USC § 2.

14         I have read the presentence report in this matter and

15   its recommendations.  In addition I have the read the

16   Defendant's sentencing memorandum.  I have read the objections

17   to the presentence report; the Government's response to the

18   objections; the Probation Officer's addendum; and the letters

19   that were written on behalf of the Defendant and were submitted

20   under two cover letters, both September 29 and October 17,

21   2008.

22         Mr. McCormick, have you read the presentence report

23   and recommendations?

24         MR. MCCORMICK:  Yes, I have, Your Honor.

25         THE COURT:  Do you agree with the offense level and

1    criminal history category calculation of 33 and 3?

2              MR. MCCORMICK:  Yes, Your Honor.

3              THE COURT:  Mr. Valdez, do you agree with the

4    criminal history category of 3?

5              MR. VALDEZ:  Yes, Your Honor.

6              THE COURT:  And your objections have been overruled,

7    but your position is that the total offense level should be 29,

8    correct?

9              MR. VALDEZ:  Correct, Judge.

10             THE COURT:  Are there any other errors or objections

11   you wish to make?

12             MR. VALDEZ:  No, Your Honor.

13             THE COURT:  Mr. Cuevas Mendoza, was the presentence

14   report read to you in Spanish?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Did you and your lawyer have a chance to

17   discuss the contents of this report?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Are there any errors in the report that

20   you would like to bring to my attention for correction?

21             THE DEFENDANT:  Well, no.

22             THE COURT:  Have you been satisfied with the

23   representation Mr. Valdez has provided?

24             THE DEFENDANT:  Well, yes.

25             THE COURT:  Mr. Valdez, what would you like to say on

1    your client's behalf?

2         MR. VALDEZ:  Judge, I don't know -- I have two family

3    members who would like to address the Court; would you want to

4    do that now?

5         THE COURT:  However you would prefer to make the

6    presentation.  If you'd like me to hear from them first and

7    then make your comments, that would fine, --

8         MR. VALDEZ:  We can --

9         THE COURT:  -- or the other way?

10        MR. VALDEZ:  We can do that Judge.

11        THE COURT:  Okay.

12        MR. VALDEZ:  That will be fine.

13        THE COURT:  Mr. Cuevas Mendoza, if you would go back

14   to your table while I hear from these two individuals.

15        MR. VALDEZ:  Judge, I'm going to make a minor

16   inquiry, because I know his daughter wanted to speak.  But she

17   wrote a letter and she's been crying.  I just want to make sure

18   that she's okay.

19        THE COURT:  Okay.  Good afternoon.  Can you tell me

20   your name.

21        MRS. CUEVAS:  Esmeralda Cuevas.

22        THE COURT:  And what is your relationship to Javier

23   Cuevas?

24        MRS. CUEVAS:  Wife.

25        THE COURT:  What would you like to say on his behalf?

1          MS. CUEVAS:  I want to say he's not guilty of

2     everything's he being accused of doing.  He is not.  And I

3     would like to say if he's going to be sentenced I don't want

4     him being sent outside the State.  Because we want to be able

5     to visit him here, and if he goes somewhere else we won't be

6     able to see him; and we are the only family he has here.

7          I don't know what else to say.

8          THE COURT:  I did want to explain something to you,

9     because I did read the same thing in your letter, that you

10    hoped that I would not send him out of the State of Arizona.

11         Please understand that I don't decide where your

12    husband will serve his prison sentence; that decision is made

13    by the Bureau of Prisons.  I can only make a recommendation to

14    them, and they will try to follow my recommendation if they

15    can, but they do not have to.

16         And I do know that it is difficult at the present

17    time to designate or locate people in Arizona, because I've

18    been told by the people at the Bureau of Prisons, when I've

19    made that recommendation in the past, that there are not very

20    many if any, bed spaces available in Arizona.  But I will make

21    a recommendation that he be placed in a facility as close to

22    Arizona as possible if he can't be placed in Arizona, so that

23    his family members will be able to visit him.  But I don't have

24    the final say over that.

25         MRS. CUEVAS:  Okay.

1          THE COURT:  Thank you, very much.

2          Good afternoon, could you tell me your name.

3          MS. CUEVAS:  Graciela Cuevas.

4          THE COURT:  And you are Javier Cuevas' daughter?

5   Yes?

6          MS. CUEVAS:  Yes.

7          THE COURT:  What would you like to say on his behalf?

8          MS. CUEVAS:  That we need him at home.  We feel so

9   lonely without him, and he's not guilty.

10          THE COURT:  Thank you, very much.

11          Mr. Cuevas, would you please come back to the podium

12   with your lawyer.

13          MR. VALDEZ:  Judge, if I may --

14          THE COURT:  Before you start, I hope that you have

15   explained that the only thing we're here to discuss is whether

16   your client gets the minimum sentence of ten years --

17          MR. VALDEZ:  Right.

18          THE COURT:  -- or something more.  That based on the

19   offense to which he pled guilty that he must serve at least ten

20   years in prison?

21          MR. VALDEZ:  Right.  Yes, Judge.

22          THE COURT:  Okay.  Thank you.  Please proceed.

23          MR. VALDEZ:  Yes, Judge.  Judge, if I may, I did file

24   the sentencing memo, and what I try to do with that sentencing

25   memo is I try to highlight the other cases and their sentences

1    that they received.  I had Mr. McCormick help me with that to

2    try to get as much information or complete information as I

3    possibly could.

4            We are requesting Judge, that you depart and consider

5    the minimum sentence in this particular case, based upon what I

6    had indicated in my motion.

7            I do note that there is an individual, Mr. Verelas,

8    Judge, that I indicated in my motion who was similar situated

9    as my client was.  I did speak to the Probation Officer on that

10   issue, and what she indicated to me was the only difference was

11   that Mr. Verelas had a -- no, my client had a higher criminal

12   history than Mr. Verelas.  But besides that they were similar

13   situated.

14           And so what I am requesting, Judge, is I'm requesting

15   that the Court consider a sentence similar to what he received,

16   which was 120 months.

17           Judge, additionally, I guess in this particular

18   situation --

19           THE COURT:  Am I correct that the only person that

20   got a sentence that was greater than 120 months actually shot

21   somebody?

22           MR. VALDEZ:  Yes, Judge.  Yes, exactly.  And that

23    was --

24           THE COURT:  Because I wasn't able to get any pattern

25   here on the sentencing, but I did note that one person who got

1    a particularly lengthy sentence actually fired his weapon --

2            MR. VALDEZ:  Right.

3            THE COURT:  -- and apparently shot someone.

4            MR. VALDEZ:  Judge, and based upon the information

5    that I have with the other individuals, many of the other

6    individuals that were sentenced, they were isolated to one

7    specific garden.  And that was one of the -- that was one of

8    the difference here.

9            And what I was trying to -- I'm still trying to

10   persuade the Court in viewing -- a lot of those individuals

11   were actually working there; they were armed, they were

12   actually cultivating.  And -- but they were limited to the

13   specific garden.

14           My client, it's our position that he wasn't doing

15   that, he wasn't armed directly.  I mean, I know we discussed

16   the issues there with regards to the firearm that was found at

17   his house and at the place.  But there's no evidence to suggest

18   that he actually provided those firearms.

19           And compare that to what he did in this particular

20   case, his guidelines are high because of the different gardens

21   where he was at.  But I still think that if you compare his

22   actions, Judge, and based upon balancing the totality of the

23   circumstances in this particular case, I think that a minimum

24   sentence is still a lot of time to punish and to deter him.

25           And, you know, and I think if you compare all the

1    individuals in this particular case I think it coincides with

2    their sentence.

3            THE COURT:  Thank you.  Mr. Cuevas Mendoza, what

4    would you like to say on your own behalf?

5            THE DEFENDANT:  Well I would like to apologize to the

6    State for what I did.  I would like to be given one more chance

7    and a fair sentence so I can go back to my family.  We never

8    had any money.  We never did, my family never did.

9            I've never made any money from drugs.  This is the

10   first time I try to become involved with this.  I didn't know

11   what kind of harm this would bring upon my family, myself.

12           All along I have been working.  I was employed for a

13   company for a long time.  I have done nothing else in my life

14   other than work.

15           That's all.

16           THE COURT:  Thank you.  Mr. McCormick.

17           MR. MCCORMICK:  Your Honor, I just want to clarify

18   one thing about the individual who received the 17 year

19   sentence, he didn't shoot anybody, he himself got shot, because

20   he --

21           THE COURT:  Oh, he was shot.  Okay.

22           MR. MCCORMICK:  He had a weapon which he pointed at

23   the officer, and the officer shot him.  I don't really think

24   that makes a difference to what we're doing here, but I wanted

25   to make sure that was clear.

1      THE COURT:  Well his conduct was clearly egregious

2 than others, because he actually pointed a loaded weapon at

3 somebody, and theoretically may have fired had he not first

4 been shot by law enforcement.

5      MR. MCCORMICK:  Well we found a casing there, he may

6 have in fact fired, but we don't know.  It was never tested

7 against the gun.  But that's a different character for a

8 different time.

9      Your Honor, the Government does recommend the 68

10 months -- 168 months' sentence that is listed as a recommended

11 sentence in the presentence report.  And what I do, I'm

12 constantly receiving information from trends, and what we're

13 finding nationwide.  And there was an interesting trend that

14 happened early in the 2000s, of drugs being manufactured, and

15 I'm talking not marijuana, but meth, actually in Mexico, and a

16 downturn in production in the United States.

17      And how this touches on marijuana is, because of the

18 violence that's happening in Mexico right now and it's not

19 receiving nearly the press that it should, it is extremely

20 violent in Mexico right now, and it is over the drug cartels.

21      You have a city like Juarez, which is a city of I

22 believe a million and a half that in the last year has had 1500

23 murders related, specifically related to drug trafficking.

24      It's not all that different along the cities, along

25 the border of Arizona.  And you find the same in Tijuana,

1   although I believe the count is more like around 800 murders.

2       The violence is intense.  And what's happening now,

3   is now the trend is that meth is being produced more in the

4   United States; it's coming back to be produced here, and that's

5   because of the problems in Mexico with these cartels.

6       And the same thing is happening with marijuana.  The

7   production of marijuana in the United States is increasing

8   because of what's going on in Mexico.

9       Why that's important is, it's important to send a

10  message to people here in the United States, that if you grow

11  marijuana you are going to get a serious sentence.  The

12  Defendant needs to be sentenced to a serious sentence.  We need

13  to --

14      THE COURT:  Isn't ten years pretty serious for what

15  amounts to -- I realize it's not his first offense, but his

16  other offense was completely and totally unrelated.  I mean, it

17  was an aggravated DUI.  It's a serious crime and a dangerous

18  crime, but it doesn't bear any relationship to this crime.

19      MR. MCCORMICK:  I agree.  I agree with that

20  completely, Your Honor.

21      No, my argument goes more towards were it not for

22  people conducting these gardens there wouldn't be people out in

23  those gardens growing them.  There wouldn't be people armed

24  pointing weapons at law enforcement who are merely out there

25  doing their job.

1    And I can tell you that that garden in that case was

2    located by a woman hiker, by herself, who happened through that

3    garden.  Now she's fortunate that she didn't come across these

4    people.

5    If they're going to pull a gun on an armed law

6    enforcement officer, what are they going to do to a lone hiker

7    out in the middle of the woods who finds where they're staying?

8    This situation creates incredible danger for the

9    public and also a serious message needs to be sent; ten years

10    is a serious message, no doubt.

11    However, the individual who received the ten year

12    sentence was somebody probably not as high up as the Defendant

13    that stands before you now.

14    I can tell you there's a lot of frustration by other

15    judges who have sentenced these other individuals who were in

16    the gardens, saying, "Why aren't you getting the higher up

17    people?"  And we're trying, and now we have one.

18    And that's why the appropriate sentence would be,

19    albeit the low end, but a very serious sentence of 168 months.

20    THE COURT:  Thank you, Mr. McCormick.

21    The Court finds the presentence report is accurate

22    and correctly calculates the offense level and criminal history

23    category at 33 and 3 respectively.  The guidelines suggest a

24    sentence of 168 to 210 months in custody.

25    The Defendant is in criminal history category 3, by

1   virtue of a felony conviction for aggravated DUI.  And all of

2   his criminal history points arise out of that one felony

3   conviction, because he was arrested for this offense while he

4   was still on probation for that first felony conviction.

5        And within two years following his release from his

6   mandatory four months of incarceration he actually only gets

7   two points for that felony, because of receiving what amounts

8   to the minimum sentence in State court.

9        Placing this Defendant in criminal history category

10  2, in my opinion -- or 3, overstates his criminal history.  In

11  addition, this criminal history bears no relationship to the

12  crime for which he is presently being sentenced.

13       He had only -- I mean, I don't in any way attempt to

14  minimize the danger to the community that aggravated driving

15  while under the influence presents, but the fact that the

16  Defendant was convicted of that offense does not relate in any

17  way to whether or not he would involve himself in the criminal

18  activities of conspiring with others to cultivate marijuana.

19       So I believe that his criminal history category is

20  overstated as a 3, particularly in attempting to relate it to

21  this offense.

22       Additionally the Defendant is being sentenced to

23  prison for the first time.  He hasn't suffered any prior prison

24  sentence.  As I mentioned he spent four months in jail, but

25  that's mandatory minimum for that felony DUI.

1      I agree with Mr. McCormick that this was a very

2  serious crime.  There was a very large amount of marijuana

3  being cultivated.  It was being cultivated in national forest

4  land.  The individuals who were hired to tend to this

5  cultivation were armed so that they could protect the

6  marijuana.

7      This Defendant was clearly involved, according to the

8  conclusions I have reached, in having some significant

9  responsibility for directing the cultivation, supplying the

10  workers and apparently transporting the workers to the sites

11  where they worked.

12      He was involved in more than one garden.  He

13  apparently was a contact person for a variety of individuals.

14  Extreme danger to law enforcement and to the community at large

15  was presented by these individuals who were placed out there

16  and armed to protect the marijuana.

17      And unlike perhaps what's going on along the Mexican

18  border, I don't think they were trying to protect the marijuana

19  from other people who were involved in marijuana dealing, but

20  as one of the Defendants told me, they were on the lookout for

21  law enforcement.  They were specifically instructed about

22  looking out for airplanes that were looking for this -- these

23  cultivation sites.

24      And being armed appears to me to more likely being

25  armed to defend the marijuana from law enforcement, where

1   others who might happen upon it, and not to defend it from
2   other drug dealers who might try to steal it.
3         There is a ten year mandatory minimum sentence to be
4   imposed in this case by statute.  The question is, in my mind,
5   is whether or not this Defendant should receive the mandatory
6   minimum, or whether considering the 18 USC 3553 factors,
7   suggests that he should receive a sentence greater than the
8   mandatory minimum.
9         As the Court has mentioned this was a very serious
10   offense.  This Defendant and others who might involve
11   themselves in such large scale marijuana operations need to be
12   deterred from this type of criminal conduct, and the public
13   needs to be protected from individuals like this Defendant, who
14   would engage in this type of, not just illegal conduct, but
15   potentially violent and dangerous conduct.
16         Not that he personally engaged in it, but he allowed
17   for individuals, or participated in allowing individuals who
18   were armed to be out there cultivating these gardens.
19         The need to avoid unwarranted sentencing disparities
20   is also important, but I don't believe that imposing the
21   sentence that I intend to impose, which is 144 months in
22   prison, creates a sentencing disparity.  This Defendant was not
23   identically situated to the other individual to whom he
24   compares himself, but actually had apparently greater
25   responsibility and was engaged in activities related to more

1    than one marijuana garden.

2              And I think that it is important that a sentence

3    above the mandatory minimum be imposed, to impress upon both

4    this Defendant and others who would engage of this type of

5    behavior, that the minimum sentence prescribed by law for this

6    offense does not apply to individuals who have engaged in more

7    than the minimum necessary to commit the crime.

8              This Defendant engaged in many more activities than

9    those, and the role adjustment that the Court affirmed is

10   evidence of that.

11             Therefore, pursuant to the plea agreement and the

12   Sentencing Reform Act of 1984, it is the judgment of the Court

13   that the Defendant be committed to the custody of the Bureau

14   Prisons for 144 months, and pay a $100 special assessment.  The

15   assessment is due immediately, but may be paid pursuant to the

16   Bureau of Prisons' inmate financial responsibility program in

17   payments of not less than $25 per quarter, payable to the Clerk

18   of the District Court in Phoenix.  The Court finds the

19   Defendant does not have the ability to pay a fine, and orders

20   the fine waived.

21             The Court recommends to the Bureau of Prisons that

22   the Defendant be permitted to participate in the Bureau of

23   Prisons' residential drug abuse treatment program.

24             Upon release from prison the Defendant shall be on

25   supervised release for five years.  During this time the

1    Defendant is ordered to comply with all standard conditions of

2    supervision adopted by the Court in General Order 05-36.

3           Of particular importance is the condition that the

4    Defendant not commit another Federal, State or local crime

5    during the time of supervision.

6           The following additional conditions also apply:  The

7    Defendant is ordered to participate as instructed by his

8    Probation Officer in a program of substance abuse treatment,

9    which may include testing for substance abuse and contribute to

10    the cost of treatment in an amount to be determined by his

11    probation officer.

12           The Defendant is also ordered to submit his person,

13    property residence, office or vehicle to a search conducted by

14    his probation officer at a reasonable time and in a reasonable

15    manner.

16           During the period of his supervised release the

17    Defendant is ordered to abstain from all use of alcohol and

18    alcoholic beverages.

19           The Defendant is ordered to report in person to the

20    Probation Office in the district to which he's released, within

21    72 hours of his release from the Bureau of Prisons.

22           And finally, at the request of Defendant and his

23    family, the Court recommends that the Bureau of Prisons

24    designate the Defendant to Arizona, or to a location as close

25    to Arizona as possible.  All of he Defendant's family resides

1    in Arizona, and a placement far from Arizona would prohibit --

2    make it prohibitive for them to visit.

3            Mr. McCormick, is there anything further from the

4    Government?

5            MR. MCCORMICK:  Yes, Your Honor.  If I might have

6    just a moment.

7            The Government moves to dismiss Counts 2 and 3 of the

8    indictment against this Defendant.

9            THE COURT:  So ordered.  Anything else, Mr. Valdez?

10           MR. VALDEZ:  No, Your Honor.

11           THE COURT:  Let me advise you concerning your rights,

12   your waiver of your appeal rights then, Mr. Cuevas.

13           Sir, had you gone to trial and been convicted after a

14   trial you would have had a right to appeal from the orders of

15   the Court and to have a lawyer represent you.

16           If you couldn't afford a lawyer, a lawyer would have

17   been appointed and the necessary records and transcripts

18   provided at Government expense.

19           You do not have these rights.  You waived them in

20   your plea agreement so long as you were sentenced in accordance

21   with that agreement.  I did sentence you in accordance with

22   your agreement.  It is my opinion that you've waived all rights

23   to appeal.  But please consult with your lawyer and satisfy

24   yourself that I am correct about your appeal waiver.

25           If after talking to your lawyer you think you have a

1    right to appeal and you want to exercise that right you must do

2    so by filing a notice of appeal within ten days of today, or

3    any rights you think you may have to appeal will be waived.

4            Do you understand?

5            THE DEFENDANT:  yes.

6            THE COURT:  Thank you.  Counsel may be excused.

7            MR. VALDEZ:  Thank you.

8            MR. MCCORMICK:  Thank you, Your Honor.

9        (Proceedings Concluded)

10                            -oOo-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                              CERTIFICATE

4

5   I (we) certify that the foregoing is a correct transcript from

6   the electronic sound recording of the proceedings in the

7   above-entitled matter.

8

9   Dated: <u>April 20, 2009</u>

10                                    Linda J. Heppler
                                      A/V Tronics, Inc.
11                                    365 E. Coronado Road
                                      Suite #100
12                                    Phoenix, AZ  85004-1525

13

14

15

16

17

18

19

20

21

22

23

24

25